UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EDMOND SPENCER (#253212)                                    CIVIL ACTION

VERSUS

WILLIAM ROSSO, ET AL.                                        NO. 15-78-JWD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 26, 2016.

                                              _____
                                              RICHARD L. BOURGEOIS, JR.
                                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EDMOND SPENCER (#253212)                                              CIVIL ACTION

VERSUS

WILLIAM ROSSO, ET AL.                                                 NO. 15-78-JWD-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) (R. Doc. 9). The motion is opposed. (R. Doc. 10).

The *pro se* plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Capt. William Rosso, Asst. Warden Chad Menzina, Major Willie Richardson, Capt. Benjamin Zeringue Warden Burl Cain, and Dr. John Doe,[1] complaining that his constitutional rights have been violated through excessive force, deliberate indifference to his serious medical needs, denial of due process in connection with disciplinary proceedings, and retaliation for the exercise of First Amendment rights. The plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

The defendants first seek dismissal on jurisdictional grounds, presumably pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim against Warden Cain[2] in his official capacity. In this regard, the defendants are correct that § 1983 does not

---

[1] The unidentified "Dr. John Doe" defendant has not been served in this case. The plaintiff has never provided the identity of this person so that service could be effected upon him. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of the plaintiff to serve defendant Dr. John Doe within 120 days of commencement of his action (the applicable time period at the time the plaintiff's Complaint was filed) is justification for dismissal of defendant Dr. John Doe from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against the unidentified "Dr. John Doe" defendant be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon him.

[2] All other defendants are named in their individual capacities.

provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claims asserted against defendant Cain in his official capacity for monetary damages are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claim for declaratory and injunctive relief asserted against defendant Cain in his official capacity also remains viable because such a claim is not treated as a claim against the state. *Will v. Michigan Department of State Police*, *supra*, 491 U.S. at 71 n.10. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*,

*supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges the following. On August 6, 2013, he was injured in a vehicle accident which required him to wear a sling on his left arm. On May 20, 2014, the plaintiff was standing in the light duty line at work call at Camp D when he was instructed by defendant Capt. Rosso to work in the field. The plaintiff showed defendant Rosso his indoor duty status form, and told him that he could not work in the field. Defendant Rosso began

yelling and cursing at the plaintiff, and told him to go to work in the field or that he would be placed in administrative segregation.  The plaintiff turned away from defendant Rosso, who grabbed the strap of the plaintiff's arm sling and pulled it, causing the sling to be ripped off of the plaintiff's arm.  Defendant Rosso then twisted the plaintiff's arm behind his back, and he felt something pop or tear in his shoulder.  The plaintiff was then placed in administrative segregation for Rule 5 (Aggravated Disobedience) and Rule 28 (Aggravated Work Offense) violations.

Approximately three hours later, the plaintiff was examined by an EMT, but received no further treatment.  Two days later, on May 22, 2014, the plaintiff made an emergency medical complaint due to the pain he was experiencing in his left shoulder.  The plaintiff was taken to the prison hospital.  An x-ray of the plaintiff's shoulder was negative, and the plaintiff was discharged.

When the plaintiff returned from the hospital, a disciplinary hearing was held, chaired by defendant Major Richardson.  Despite showing defendant Major Richardson his indoor duty status form, the plaintiff was found guilty and sentenced to four weeks loss of canteen.

The plaintiff was subsequently seen by Dr. Lavaspere on June 4, 2014, who ordered an MRI and orthopedic consultation.  The plaintiff later filed an ARP against defendant Rosso on August 18, 2014.

On September 4, 2014, the plaintiff was called to the Camp D Security Supervisor's office.  Defendant Asst. Warden Menzina, in the presence of defendants Major Richardson, Capt. Rosso, and Capt. Zeringue (and Col. Randy Robinson who has not been named as a defendant), told the plaintiff to withdraw his ARP.  The plaintiff refused and defendants Menzina and Rosso began to curse at him, and stated that the plaintiff could either withdraw his ARP or they were

going to, "f*** over you."  The plaintiff again refused, and he was told by defendant Rosso to, "get your stupid a** out of here and just get ready, because you don't have long."

On September 8, 2014 an MRI of the plaintiff's left shoulder revealed a torn rotator cuff and ligament damage. On September 27, 2014, the plaintiff was placed in administrative segregation by defendant Zeringue who authored a false Disciplinary Report accusing the plaintiff of violating Rule 5 (Aggravated Disobedience).  A disciplinary hearing was held on September 30, 2014, and the plaintiff was found guilty and sentenced to Camp J.  The plaintiff filed a disciplinary Appeal with defendant Cain on October 3, 2014.  As of the filing of the Complaint, the plaintiff's Appeal had not been answered.

The plaintiff has also sent numerous complaints to defendant Cain regarding his medical care.  On November 8, 2014, a physical therapist requested that the plaintiff have an MRI of his neck and upper back prior to beginning physical therapy for his shoulder.  Despite four different physical therapists requesting one, an MRI of the plaintiff's neck and upper back had not been done as of the filing of the Complaint.

In response to the plaintiff's allegations, the defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims.  The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.  *Id.* at 201.  Second, the district court looks to whether the rights allegedly violated were clearly established.  *Id.*  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general

proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendant's motion should be granted in part. Specifically, the Court concludes the plaintiff's due process claim should be dismissed.

The plaintiff complains regarding the issuance of false disciplinary charges against him on September 27, 2014, by defendant Capt. Zeringue, of the denial of due process during subsequent disciplinary proceedings, and of the wrongful finding of guilt and imposition of punishment thereafter. These claims, however, fail to state claims of federal constitutional dimension cognizable under 42 U.S.C. § 1983. Initially, the law is clear that the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment, without more, does not amount to a constitutional violation. *See Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984). Further, the plaintiff does not identify any alleged procedural deficiencies during his disciplinary proceedings, but even if he had, the United States Supreme Court has found that the procedures attendant to prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the state might conceivably have created a liberty interest for the benefit of the inmate. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). The *Sandin* Court found that a disciplinary sentence of a housing change to segregated confinement was not so atypical as to give rise to a claim of the violation of procedural due process. *Id*. This Court similarly concludes that the plaintiff's disciplinary punishment in this case, of a custody change to punitive segregated confinement at

Camp J, did not result in such an atypical and significant deprivation as to support a due process claim. *See Dickerson v. Cain*, 241 Fed. Appx. 193, 194 (5th Cir. 2007) (finding that placement in segregated confinement at LSP was not an "atypical or significant hardship"); *Lewis v. Dretke*, 54 Fed. Appx. 795, 2002 WL 31845293 (5th Cir. Dec. 11, 2002) (finding that an inmate's loss of trustee status and other deprivations resulting from allegedly false disciplinary charges did not present "an atypical or significant hardship"); *Day v. Lensing*, 48 Fed. Appx. 105, 2002 WL 31017145 (5th Cir. Aug. 20, 2002) (same); and *Marx v. Stephens*, 2014 WL 6453610 (S.D. Tex. Nov. 17, 2014) (same). Thus, the plaintiff may not be heard to complain regarding the alleged false disciplinary charges issued by defendant Capt. Zeringue or regarding any asserted procedural deficiencies occurring in connection with the subsequent finding of guilt and the imposition of punishment thereafter.

In addition, the plaintiff complains regarding the handling of his administrative and disciplinary appeal proceedings and of the failure of prison officials to conduct an adequate inquiry or investigation into the claims asserted in those proceedings. However, an inmate does not have a claim cognizable in this Court relative to the mishandling or denial of prison administrative or disciplinary proceedings. Specifically, the plaintiff does not have a constitutional right to have such claims properly investigated, handled, or favorably resolved, *Mahogany v. Miller*, 252 Fed. Appx. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a

legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id*. at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings. *See, e.g., Sanchez v. Grounds*, 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a 'proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation"); and *Jackson v. Mizell*, 2009 WL 1792774, *7 n. 11 (E.D. La. June 23, 2009), *affirmed*, 361 Fed. Appx. 622 (5th Cir. 2010) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation"). Accordingly, the plaintiff's claim relative to the handling and/or denial of his administrative grievance and disciplinary appeal proceedings is without legal or factual foundation and should be dismissed.

Notwithstanding the foregoing, the plaintiff also alleges that the referenced disciplinary charge levied by defendant Capt. Zeringue in September of 2014 was undertaken in retaliation for the ARP filed by the plaintiff against defendant Capt. Rosso in August of 2014, and the plaintiff's refusal to withdraw the ARP upon request. In this regard, prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods,* 60 F.3d at 1166. To prevail on a claim of retaliation, a prisoner must establish four elements: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and, (4) causation. *Morris,* 449 F.3d at 684;

*Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods,* 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods,* 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson,* 110 F.3d at 310; *Woods,* 60 F.3d at 1166.

In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris,* 449 F.3d at 684–85; *Hart,* 343 F.3d at 764. The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris,* 449 F.3d at 686 (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n. 10, (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris,* 449 F.3d at 686. *De minimis* acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Thus, an inmate's job

transfer from the commissary to the kitchen was *de minimis,* while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early,* 541 F.3d 267, 271–72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*). Adverse acts that cause an inmate only a "few days of discomfort," impose "a [single] minor sanction," or impose an otherwise constitutional restriction on the inmate would be *de minimis* acts. *Id.* at 685–86.

With regards to the plaintiff's retaliation claim, the defendants assert that the plaintiff has failed to state with specificity the ARP filed against defendant Capt. Rosso that allegedly precipitated the retaliatory conduct. The defendants further assert that even if the actions allegedly taken by defendants Menzina, Richardson, and Zeringue were retaliatory, the acts were *de minimus*. The defendants also assert that there is no chronology of events from which retaliation may be inferred, and that the plaintiff's allegations are merely conclusory.

As noted above, the plaintiff alleged that (1) on May 20, 2014 he was assaulted by defendant Rosso, and subsequently filed an ARP regarding the same on August 18, 2014, (2) on September 4, 2014, he was called to the Camp D Security Supervisor's office and defendant Menzina told the plaintiff to withdraw the ARP, in the presence of Col. Robinson, and defendants Richardson, Rosso, and Zeringue, (3) the plaintiff refused to withdraw the ARP, (4) defendants Menzina and Rosso began cursing and said that the plaintiff could either drop the ARP or they were going to, "F*** over you,"(5) he again refused to withdraw the ARP and was told by defendant Rosso, "get your stupid a** out of here and just get ready, because you don't have long," and (6) on September 27, 2014 defendant Zeringue authored a false disciplinary report, and the plaintiff was subsequently sentenced to a custody changed to Camp J.

First, contrary to the defendants' assertion that the plaintiff has not identified the ARP filed against defendant Rosso with any specificity, the plaintiff alleged in his Complaint that he filed an ARP against defendant Rosso on August 18, 2014.  Furthermore, the plaintiff attached to his Complaint a document titled, "Administrative Remedy Procedure & Property Claims Input Screen," which reflects that the plaintiff's ARP regarding defendant Rosso (LSP-2014-2559) was received on August 20, 2014, denied at the First Step on September 30, 2014, received at the Second Step on October 21, 2014, and denied at the Second Step on November 19, 2014.  (R. Doc. 1-2, pg. 2).  The plaintiff also attached the corresponding First and Second Step Response Forms to his Complaint.  (R. Doc. 1-2, pgs. 15; 18).  These documents clearly identify the ARP filed against Defendant Rosso.

Furthermore, the plaintiff was sentenced to punitive segregated confinement as a result of the alleged retaliatory disciplinary charge.  This is not a *de minimus* punishment for purposes of § 1983.  *See Lee v. Louisiana Dept. of Corrections,* 539 Fed. Appx. 471, 474 (5th Cir. 2013); *Richard v. Martin*, 390 Fed. Appx. 323, 326 (5th Cir. 2010); and *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  Additionally, the plaintiff's allegations are sufficient to allege a chronology of events from which retaliation may plausibly be inferred.  Accordingly, the defendants' Motion to Dismiss should be denied as to the plaintiff's retaliation claim.

The defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) does not address the plaintiff's claim of deliberate indifference to his serious medical needs.[3]  Accordingly, said claim

---

[3] With regards to the plaintiff's request for prospective injunctive relief, the plaintiff's Complaint seeks an injunction ordering defendant Cain to arrange for medical treatment for the plaintiff.  Citing the requirements to obtain a preliminary injunction, the defendants assert that the plaintiff is not entitled to the injunctive relief sought against defendant Cain because the plaintiff has not shown that there is a substantial likelihood that he will prevail on the merits or that he will suffer irreparable injury.  The Court has already applied that standard and denied plaintiff's request for a preliminary injunction. (R. Doc. 75).  No other argument is provided by the defense in the instant motion.

along with the plaintiff's claim for prospective injunctive relief remains viable at this juncture.[4] As do the plaintiff's claims regarding excessive use of force and for declaratory relief, which are also not addressed by the defendants' Motion.

Finally, the defendants assert that supplemental jurisdiction over the plaintiff's state law claims should be declined. To the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, given the Court's recommendations and the nature of the plaintiff's remaining federal claims, the Court finds that the plaintiff's state law claims will substantially predominate over the claims over which the district court has original jurisdiction. Accordingly, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is the recommendation of the magistrate judge that that the plaintiff's claims against Dr. John Doe be dismissed, without prejudice, for failure of the plaintiff to serve this defendant within 120 days as was mandated by Federal Rule of Civil Procedure 4(m) at the time of the filing of the plaintiff's Complaint. It is further recommended the defendants' Motion to Dismiss be granted in part, dismissing any claims against defendant Cain in his official capacity for monetary damages, and the plaintiff's due process claims. It is the further recommendation of the magistrate judge that the defendants' Motion to Dismiss be denied as to the plaintiff's claims

---

[4] The Court is not suggesting that the plaintiff is entitled to injunctive relief or that defendant Cain is the proper party from whom the plaintiff should seek such relief. At this time, the Court is simply stating that the plaintiff's claim for injunctive relief survives the defendants' Motion to Dismiss for the reasons stated.

of retaliation, deliberate indifference to his serious medical needs, excessive use of force, and for declaratory and injunctive relief.  It is further recommended that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims.

Signed in Baton Rouge, Louisiana, on January 26, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**