UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EDMOND SPENCER (#253212)                                    CIVIL ACTION

VERSUS

WILLIAM ROSSO, ET AL.                                       NO. 15-78-JWD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 20, 2016.

                                                            _____
                                                            RICHARD L. BOURGEOIS, JR.
                                                            UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EDMOND SPENCER (#253212)                                        CIVIL ACTION

VERSUS

WILLIAM ROSSO, ET AL.                                           NO. 15-78-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment (R. Doc. 113). The Motion is opposed. *See* R. Docs. 116 and 129.

The *pro se* plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Capt. William Rosso, Asst. Warden Chad Menzina, Major Willie Richardson, Capt. Benjamin Zeringue Warden Burl Cain, and Dr. John Doe, complaining that his constitutional rights have been violated through excessive force, deliberate indifference to his serious medical needs, denial of due process in connection with disciplinary proceedings, and retaliation for the exercise of First Amendment rights.[1] The plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, LSP Penitentiary Directive #13.063 (Duty Status Classification System), Disciplinary Rules and Procedures (2008), and the affidavits of Capt. William Rosso, Asst. Warden Chad Menzina, Major William Richardson, Capt. Benjamin Zeringue, EMT Brook Summers, Msgt. Dylan Nettles, Warden Burl Cain, and Dr. Randy Lavespere. The plaintiff

---

[1] The plaintiff's claims against Dr. John Doe and against Warden Cain in his official capacity for monetary damages, along with the plaintiff's due process claims have been dismissed. The Court also declined the exercise of supplemental jurisdiction over the plaintiff's potential state law claims. *See* R. Docs. 83 and 87.

opposes the defendants' Motion relying upon the pleadings (including his Verified Complaint), a Statement of Disputed Factual Issues, his own declaration, the declarations of Freddie Marsalis and Donald Hanson, a copy of a disciplinary report dated September 27, 2013, a copy of a disciplinary report dated May 20, 2014, a copy of a Medical Duty Status Report dated May 19, 2014, a copy of a grievance ("LSP-2014-2559"), a copy of a supplemental grievance dated October 5, 2014, a copy of a First Step Response Form for grievance "LSP-2014-2559," a copy of a Second Step Response Form for grievance "LSP-2014-2559," a copy of a document titled "Traverse and Request for Rehearing," a copy of a document titled "Appeal from the Disciplinary Board," copies of excerpts of the plaintiff's medical records, copies of various discovery requests and responses, copies of various correspondence to Warden Cain and "Asst. Warden", and a copy of Warden Cain's Job Duties

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and

unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Verified Complaint, the plaintiff alleges the following: On August 6, 2013, he was injured in a vehicle accident which required him to wear a sling on his left arm. On May 20, 2014, the plaintiff was standing in the light duty line at work call at Camp D when he was instructed by defendant Capt. Rosso to work in the field. The plaintiff showed defendant Rosso his indoor duty status form, and told him that he could not work in the field. Defendant Rosso began yelling and cursing at the plaintiff, and told him to go to work in the field or that he would be placed in administrative segregation. The plaintiff turned away from defendant Rosso, who grabbed the strap of the plaintiff's arm sling and pulled it, causing the sling to be ripped off of the plaintiff's arm. Defendant Rosso then twisted the plaintiff's arm behind his back, and he felt something pop or tear in his shoulder. The plaintiff was then placed in administrative segregation for Rule 5 (Aggravated Disobedience) and Rule 28 (Aggravated Work Offense) violations.

Approximately three hours later, the plaintiff was examined by an EMT, but received no further treatment.  Two days later, on May 22, 2014, the plaintiff made an emergency medical complaint due to the pain he was experiencing in his left shoulder.  The plaintiff was taken to the prison hospital.  An x-ray of the plaintiff's shoulder was negative, and the plaintiff was discharged.

When the plaintiff returned from the hospital, a disciplinary hearing was held, chaired by defendant Major Richardson.  Despite showing defendant Major Richardson his indoor duty status form, the plaintiff was found guilty and sentenced to four weeks loss of canteen.

The plaintiff was subsequently seen by Dr. Lavaspere on June 4, 2014, who ordered an MRI and orthopedic consultation.  The plaintiff later filed an ARP against defendant Rosso on August 18, 2014.

On September 4, 2014, the plaintiff was called to the Camp D Security Supervisor's office.  Defendant Asst. Warden Menzina, in the presence of defendants Major Richardson, Capt. Rosso, and Capt. Zeringue (and Col. Randy Robinson who has not been named as a defendant), told the plaintiff to withdraw his ARP.  The plaintiff refused and defendants Menzina and Rosso began to curse at him, and stated that the plaintiff could either withdraw his ARP or they were going to, "f*** over you."  The plaintiff again refused, and he was told by defendant Rosso to, "get your stupid a** out of here and just get ready, because you don't have long."

On September 8, 2014 an MRI of the plaintiff's left shoulder revealed a torn rotator cuff and ligament damage.  On September 27, 2014, the plaintiff was placed in administrative segregation by defendant Zeringue who authored a false Disciplinary Report accusing the plaintiff of violating Rule 5 (Aggravated Disobedience).  A disciplinary hearing was held on September 30, 2014, and the plaintiff was found guilty and sentenced to Camp J.  The plaintiff

filed a disciplinary Appeal with defendant Cain on October 3, 2014. As of the filing of the Complaint, the plaintiff's Appeal had not been answered.

The plaintiff has also sent numerous complaints to defendant Cain regarding his medical care. On November 8, 2014, a physical therapist requested that the plaintiff have an MRI of his neck and upper back prior to beginning physical therapy for his shoulder. Despite four different physical therapists requesting one, an MRI of the plaintiff's neck and upper back had not been done as of the filing of the Complaint.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof.

*Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."  *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

Undertaking the qualified immunity analysis with respect to the plaintiff's remaining claims of use of excessive force, retaliation, and deliberate indifference to his serious medical needs, the Court finds that the defendants' motion for summary judgment should be granted in part and denied in part.  Specifically, the Court finds that there are genuine disputed issues of material fact relative to the plaintiff's claims or use of excessive force and retaliation; however, the plaintiff's evidentiary showing is not sufficient to support a finding that there are genuine disputed issues of material fact in this case relative to his claim of deliberate indifference to his serious medical needs.

First, with regard to the plaintiff's claim of excessive force asserted against defendant Rosso, a use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment

---

[2] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.  *Id.*

necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that there are disputed questions of material fact in this case regarding the objective reasonableness of defendant Rosso's use of force on May 30, 2014. The plaintiff has filed a verified Complaint and has provided his own sworn declaration and those of inmates Freddie Marsalis and Donald Hanson, executed "under penalty of perjury," attesting that on May 20, 2014, the plaintiff was standing in the light duty line at work call at Camp D when he was instructed by defendant Capt. Rosso to work in the field. The plaintiff showed defendant Rosso his indoor duty status form, and told him that he could not work in the field. Defendant Rosso began yelling and cursing at the plaintiff, and told him to go to work in the field or that he would be placed in administrative segregation. The plaintiff turned away from defendant Rosso, who grabbed the strap of the plaintiff's arm sling

and pulled it, causing the sling to be ripped off of the plaintiff's arm. Defendant Rosso then twisted the plaintiff's arm behind his back, and he felt something pop or tear in his shoulder. On September 8, 2014 an MRI of the plaintiff's left shoulder revealed a torn rotator cuff and ligament damage. *See* R. Docs. 1, 116-1, and 116-3, p. 3-8.

In response to the plaintiff's assertions, defendant Rosso has presented his own competing sworn affidavit, and those of EMT Brooke Summers and Msgt. Dylan Nettles, attesting that on the referenced date, he was checking Falcon Farm line out at the check-out gate for work and the plaintiff stated that he could not work. EMT Summers was called to evaluate the plaintiff and was informed that the plaintiff was not supposed to have a sling on his arm. Defendant Rosso ordered the plaintiff to remove the sling and the plaintiff refused. Defendant Rosso then gently touched the sling strap, gently pulled it over the plaintiff's head, and gently slid it off the plaintiff's arm using only his thumb and index fingers. *See* R. Docs. 113-3, 113-8, and 113-9.

As such, the parties have provided competing sworn accounts of the events of the referenced date, and the resolution of the factual dispute will require credibility determinations that are not susceptible of determination on motion for summary judgment. In light of the apparent disputed fact issues regarding the plaintiff's excessive force claim, the defendants' Motion for Summary Judgment should be denied in this regard.

Turning next to the plaintiff's claim of retaliation, the plaintiff alleges that the disciplinary charge levied by defendant Capt. Zeringue in September of 2014 was undertaken in retaliation for the ARP filed by the plaintiff against defendant Capt. Rosso in August of 2014, and the plaintiff's refusal to withdraw the ARP upon request. In this regard, prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell,* 449

F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods,* 60 F.3d at 1166. To prevail on a claim of retaliation, a prisoner must establish four elements: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and, (4) causation. *Morris,* 449 F.3d at 684; *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods,* 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods,* 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson,* 110 F.3d at 310; *Woods,* 60 F.3d at 1166.

In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris,* 449 F.3d at 684–85; *Hart,* 343 F.3d at 764. The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that

prisoners are not unduly discouraged from exercising constitutional rights. *Morris,* 449 F.3d at 686 (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n. 10, (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris,* 449 F.3d at 686. *De minimis* acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis,* while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early,* 541 F.3d 267, 271–72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*). Adverse acts that cause an inmate only a "few days of discomfort," impose "a [single] minor sanction," or impose an otherwise constitutional restriction on the inmate would be *de minimis* acts. *Id.* at 685–86.

As noted above, the plaintiff alleged in his Verified Complaint and sworn declaration that (1) on May 20, 2014 he was assaulted by defendant Rosso, and subsequently filed an ARP regarding the same on August 18, 2014, (2) on September 4, 2014, he was called to the Camp D Security Supervisor's office and defendant Menzina told the plaintiff to withdraw the ARP, in the presence of Col. Robinson, and defendants Richardson, Rosso, and Zeringue, (3) the plaintiff refused to withdraw the ARP, (4) defendants Menzina and Rosso began cursing and said that the plaintiff could either drop the ARP or they were going to, "F*** over you,"(5) he again refused to withdraw the ARP and was told by defendant Rosso, "get your stupid a** out of here and just get ready, because you don't have long," and (6) on September 27, 2014 defendant Zeringue authored a false disciplinary report, and the plaintiff was subsequently sentenced to a custody changed to Camp J. *See* R. Docs. 1 and 116-1.

The defendants assert that the plaintiff has not asserted a true chronology of events and that the aforementioned events are unrelated. In his affidavit, defendant Rosso denies any knowledge or involvement in the events of September 4, 2014 and September 27, 2014. *See* R. Doc. 113-3. Defendant Menzina also denies knowledge or involvement in the same, and further states that because he was scheduled to work Monday through Friday as evidenced by his time dates sheet, and September 27, 2014 was a Saturday, he was not involved. *See* R. Doc. 113-4, p. 1-2 and 8. In his affidavit, Defendant Richardson states that he was on vacation from September 1 through September 5, 2014 as evidenced by his leave slip, and denies any knowledge of the original incident with defendant Rosso on May 20, 2014, the ARP filed by the plaintiff regarding the actions of defendants Rosso, and the events of September 4, 2014. *See* R. Doc. 113-5, p. 1-3 and 6. Defendant Zeringue also denies any knowledge of original incident with defendant Rosso because he was assigned to Death Row on the "D" team on May 20, 2014, and denies knowledge of the ARP filed by the plaintiff regarding the actions of defendant Rosso. Defendant Zeringue also denies any knowledge or involvement in the events of September 4, 2014, and states that the disciplinary report issued by him on September 27, 2014 was true.

The parties have again provided competing sworn accounts of the events of September 4, 2014 and September 27, 2014, and the resolution of the factual dispute will require credibility determinations that are not susceptible of determination on motion for summary judgment. The documentary evidence submitted by the defendants, while suggestive that defendant Richardson was not present on September 4, 2014 and that defendant Menzina was not present on September 27, 2014, it is not so concrete as to negate the allegations of the plaintiff's Verified Complaint and sworn declaration on summary judgment. In light of the apparent disputed fact issues

regarding the plaintiff's retaliation claim, the defendants' Motion for Summary Judgment should be denied in this regard.

Finally, regarding the plaintiff's interconnected claims of deliberate indifference to his serious medical needs and for injunctive relief, a prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir.2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

As this Court has previously noted in reviewing the plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (*see* R. Docs. 11 and 68), a review of the plaintiff's medical records reveals that the plaintiff requested an MRI of his neck, and he reported to his physical therapists that he was waiting on an MRI of his cervical spine. (R. Doc. 32-3). No recommendation for an MRI by a physical therapist was noted in the records. The

records also show that the plaintiff consistently received physical therapy until he requested to be discharged on June 6, 2015.  (R. Doc. 32-3, pg. 32).  Furthermore, the records show consistent medical treatment of the plaintiff's injuries.  Medical personnel repeatedly diagnosed, treated, and monitored his injuries.  He is being followed by a neurologist and an orthopedist.  After conservative treatments were attempted, the orthopedist ordered an MRI of the plaintiff's cervical spine on July 7, 2015, with a plan to follow up with an NCS/EMG if the MRI was within normal limits.  (R. Doc. 32-3, pg. 29).  The plaintiff states in his declaration that the MRI was completed on August 28, 2015 and he was informed by an orthopedist of the results on October 5, 2015.  *See* R. Doc. 116-1.

The plaintiff has not shown that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints.  The plaintiff's disagreement with the timing or the course of his treatment, and allegations that he should have received further treatment are insufficient to establish a claim for deliberate indifference to his serious medical needs.  Accordingly, the plaintiff's claim against defendant Cain should be dismissed.  The plaintiff's claim for declaratory and  prospective injunctive relief should also be dismissed as defendant Cain is no longer employed at LSP and cannot grant the plaintiff injunctive relief.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 113) be granted in part, and that the plaintiff's claims against defendant Cain for deliberate indifference to his serious medical needs and his requests for declaratory and injunctive relief asserted against defendant Cain be dismissed.  It is further recommended that the defendants' Motion be denied as to the plaintiff's claims of excessive force and retaliation asserted against defendants Rosso,

Menzina, Richardson, and Zeringue, and this matter referred back to the undersigned for further proceedings.

Signed in Baton Rouge, Louisiana, on May 20, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**